Madam Clerk, please call the last case in the morning. 315-0459, Keystone Steel and Wire. Council, you may proceed. Ladies and court, Mr. Lezgonich, John Makarowski on behalf of Appellant Keystone Steel and Wire. It is our position that the arbitrator's decision and dissenting commissioner opinion are correct, that employee did not meet his burden of proof in establishing accidental injury nor causation. It is our opinion that the majority commission decision is based upon a revisionist version of facts and conjecture and speculation that takes us to a place that Peoria Bellwood never intended.  That's quite a dramatic opening statement. Go ahead. Why do I say revisionist facts? Because if you look at all the contemporaneous medical histories, which begin in 03, through the date when he first saw Dr. Mauer on May 22, 2008, at no time did he ever associate any of his symptoms or his conditions with operating a forklift. And in fact, when he saw Dr. Mauer on May 22, 2008, he specifically denied any work-related condition to his hips, and Dr. Mauer proclaimed in his report that the condition was not work-related. Council suggested as brief that the plant is some war zone and there's potholes everywhere. That is simply not the case. He transgressed his forklift over asphalt and concrete covered with steel plates. He chose the route. If any individual indicated that any area of the plant had a crack, a dip, a hole, it would immediately be taken out of service and repaired. Now, with respect to the forklift, the employee each day was required to do an inspection of the forklift. If the tires were defective, if the forklift wasn't defective in any way, he would take it out of service. Are you saying that there's never any shock to your hip while you're operating a forklift? None that has any significance as to the medical condition by all doctors in this case. Really? Well, who's Dr. Newcomer? Well, I'll get to Dr. Newcomer. I don't know that he agrees with that assertion. Well, I'll find out why Dr. Newcomer's opinion is flawed. Okay. Well, as far as what you're talking about now, though, about whether or not there were holes and whether there were shocks on the forklift and all those things, I mean, this isn't a case where the Commission didn't write out what they thought the facts were. I mean, this was a pretty comprehensive decision. They noted both sides' evidence on all of these issues and made findings. Well, they kind of share it. For example, on the part about the potholes and everything, it says the Commission finds that Mr. Rohrer proved that his job needs were repetitive in nature. He further established that he drove his forklift over a surface that had holes and spots, which caused a shock to his hips, et cetera, et cetera. That's after laying out the evidence presented on both sides. So who is to make those factual determinations? Well, I'll tell you why that's a myth. That's what it is. Because each doctor testified if there was an aggravation, the employee would know it and they would be aware of it. If you look at employee's testimony, he was aware to report any accident on the job immediately. He was asked, if you hit a pothole and you felt pain or you felt a shock and you felt you were hurt, would you report it? Yes, I would report it if I felt I was hurt. In contrast to that, you have the contemporaneous medical histories, five years of history. Let me stop there just a second, though. And there was an issue about this with the petitioner in this case. He said, I'm a complainer. I'm not a complainer. The Commission said we believe him. He at some point reported an order-related injury. He said, I thought they were talking about running into a pole or whatever. The Commission said, we believe you. And who determines the credibility of the witnesses, okay? And so when you talk about the testimony you're talking about right now, you know, the petitioner was saying, you know, you talk about having an accident. I wasn't thinking of something that develops over years. And the Commission believed him. I think that's a matter of convenience. I also have to look at the weight of the evidence on that issue. He talked to his supervisor every day, Mr. Watkins. Not at one time did he tell Mr. Watkins, did I hit a bump or I have pain? I believe it's due to the forklift. The same with the maintenance supervisor. Wait a minute. Why does he have to hit a bump? You're referring to bumps and potholes. The argument was, and the Commission believed, this was an experience as a result of the repetitive nature in the shack of driving the forklift over a number of years. The claimant never alluded to a specific incident or running over a pothole, did he? Well, he claimed every day he felt jarred. And if he felt he was jarred every day, I consider that a specific occurrence. It's not a repetitive occurrence. And if that were true, why does he go to the doctor on May 24, 2007, and say I have no trauma or unusual posture that brings about my condition? Why doesn't he say, you know, I ride a forklift all day at work and I hit bumps and I have jarring and I notice more pain? He never did that. I guess the question I think Justice Hudson is asking, where is it in the record about bumps and potholes? Yeah, there's a record and it's cited in my brief. And he specifically denied it. Denied what? Denied reporting it. He admitted he never told anyone, never told any doctor. No, I'm talking about we're getting bumps and potholes. Where is there in the record about bumps and potholes? That was his testimony, that he felt jarred. Jarred? Jarred, yeah. I'm asking about bumps and potholes. Did he say why he was jarred? Because he felt that he went over the uneven bumps and potholes. Oh, okay, so he did talk about bumps and potholes. At the time of arbitration, but no contemporaneous record of care. Why I think this case goes beyond Peoria-Bellwood, and I'll get to your question, Justice Hudson, about a newcomer, is that Peoria-Bellwood put into effect repetitive trauma. In that case, all doctors admitted that the carpal tunnel condition was caused by the work activity. That was when we demanded a specific date and time. The court said, okay, it's clear. We don't want the employee to bear the cost of his injuries. If the street caused it, they should bear the cost. But this is going to be a difficult burden of proof and not make cases that are part of the normal degenerative aging process. Why I state, even if you believe this theory of some bumps and potholes and jarrings, as the majority commission did, why a clearly opposite conclusion is apparent as the causation, is because each doctor, Dr. Newcomer, Dr. Maurer, and Dr. Jimenez, indicate that he had osteoarthritis that was part of the degenerative aging process, and the forklift activity did not cause it. One. So then we go to the second point. This case isn't about whether the arthritis was caused. Aggravated. Aggravated. Okay, so we look at aggravated, get some doctor to state a magical word, and aggravated it with no evidence supporting that. Doesn't that become conjecture and speculation, which I submit in this case it is? Because if you look, all doctors agree that there is no medical literature that exists that would establish that driving a forklift could cause or aggravate the arthritis. It is employees' burden to prove the aggravation. There's no chain of events here of saying that there was a change. It's employees' burden to prove aggravation. He submitted the testimony of two orthopedic surgeons who said that aggravated or accelerated his arthritic condition. And you're going to get to that sooner or later, right? I am getting to that. You're not getting off the hook until you address Dr. Newcomer. I am going to address it. But let's look. So there's no chain of events. He did. But I'm going to say why those opinions are flawed and against the manifest way of the evidence. There's no chain of events here because we've got five years of histories denying any posture, anything about the forklift. He mentions difficulty riding his motorcycle. Never once in five years he would think if he had all these jarrings and he felt it was the cause that he would have mentioned it. Never did. Never mentioned it to his supervisor. Now, why is this against the manifest way of the evidence? Look at Newcomer. Newcomer does examinations at Mr. Lezigonich's request. His total fee for examining him, so-called reviewing the records, which he had no notes of the records, was a total of $800. His opinion that there existed an aggravation was based upon the fact that there was a labral tear. But on cross-examination, he admitted there was no evidence of a labral tear. Further, his testimony was based upon the fact that he had to go over uneven surfaces with two-inch drop-offs. And I specifically asked him in his death, so your opinion relies upon him going two-inch drop-offs? That's page 608. Page 69 of the marker, the employee denies going over any two-inch drop-offs. So right off the bat, his opinion is flawed because it is based upon a fact that is inconsistent with the record. Even Newcomer admits that the forklift activity did not cause it. What's his opinion of aggravation based on? It's right on Petitioner's brief, page 18. Newcomer says that's the only thing the employee can attribute the onset of his hip pain is riding the forklift for eight hours. Well, if that were true, when he went to the doctors from 2003 to 2008, why didn't he mention, I noticed this when I drive the forklift? It's in none of the contemporaneous medical records. Let me ask you a question. How long did the Petitioner work for the company? 22 years. He has no relevancy. Well, it might because you're arguing that why didn't this guy mention anything before? I'm sure you've heard of good, loyal employees who take one for the team until they can't deal with the problem anymore. So why can't that be an answer to your question? Because his own history is refuted contemporaneously. He never mentions that it went to the doctor when he went to his personal doctors. If there was a problem, why didn't he state, I can't think of anything that caused it. Yeah, I have problems riding my motorcycle. Why doesn't he mention it once? But even if you take newcomer's opinion further, he indicates if he hit a bump and he aggravated, he would know it. The employee testified that if he felt he was hurt at work, he would have reported it. But he didn't. So that implies there was no such occurrence. What occurrence? If he hit a pot, maybe in his mind he didn't hit the potholes that were significant enough to report. Well, if he felt he was hurt, would he have reported that? That would have a general commutative effect of the jarring every day. The jarring is no bearing on anything. He didn't do the commission. Yeah. Well, that's why it's against him because they admit there's no medical literature. But here's the other thing that's significant about newcomer's test, and here's why I believe there's no aggravation. Because he states the osteoarthritis was not caused. Once it is present, any everyday activity of life could cause you to experience a symptom. Well, if that's the case, why do you not think driving a forklift would extend it? It didn't extend it. It didn't cause you to experience a symptom. It's no different than if I walk outside my house to get the mail in the winter and I slip my ice and I fracture my wrist, and then later on I go to work and I work on an assembly line and I have to take widgets off the line and put them on a box. When I move my hand, I'm going to have pain. But that's not what caused my fracture. I experienced a symptom of the underlying condition that already existed. And newcomer says, once it's present, anything's going to make you experience a symptom. Well, what is your response to the general well-settled doctrine that I know you're very familiar with, that employers take their employees as they find them? Take them as we find them. That's the problem. But we didn't change anything. The law also states that the employer is not to be insurer of all conditions. And in this case, you're asking the employer to accept liability for an osteoarthritic condition where even Dr. Newcomer states, and his opinion is based upon a labor of terror, which admittedly doesn't exist, going off two-inch drop-offs, which is proven not to be the case. He can't point to any finding on x-ray or any operative report to state it was changed in any way. What about Dr. Marr? Let's get to Dr. Marr. He also expressed the opinion. His opinion also supports my opinion. Ninety percent of the hips he does are arthritic in nature and have no known cause. Of those 90 percent, 30 percent have the canned deformity that Mr. Ward has. He said the osteoarthritis in and of itself for people that never work in their life would lead to a hip replacement. He admits there's no medical literature that suggests operating with Thoracliff caused or aggravates the arthritis. He admits there's no change on x-ray or any operative report that he could point to. He stated once it was present, any everyday activities could cause you to be symptomatic. It was never intended to make you ill. So in spite of all that, his opinion was that driving the forklift contributed to the acceleration of his arthritis, right? Based upon what? Because when he first wrote his report, he said it wasn't work-related. When he lawyers up and gets him to change his opinion, how credible? So do we just allow a doctor to say it's aggravation without any support? You said lawyers up. Is this a cop case or a criminal case? Cop case. Are we to allow that where there's no support behind that opinion because the doctor says aggravation without basis? Where admittedly there's no medical literature that would indicate the forklift would cause or accelerate it? Admittedly, when there's no change on x-ray or any operative findings that he could point to and state were caused by the forklift? Admittedly, when he states that this condition in and of itself would progress in the... Now that you've got the newcomer, let me see if I can call out the essence of your argument. Your argument is, yes, you acknowledge the newcomer's opinion and you're saying flawed because it's not based on any underlying medical science. Is that the essence of what you're saying? Beyond that and also because he's relying on going off two-inch drop-offs and there being a labral tear of which there is none established in the record. Oh, okay. And with respect to Jimenez, one-tenth of... May I have one more minute? I'll finish. Will you have time to reply unless you can do it very quickly? Okay. Can you do it very quickly? Yes. Jimenez does one-tenth of one percent for exams. That's one out of a thousand for respondents. He teaches the certification. He does hip surgeries. He states the forklift had nothing to do with it. There's no literature. There's no science that supports it. It's why some people get cavities, other don't because some of them have better anatomy. It's all congenital. If you're to stick an employer with a $127,000 decision where they paid the medical under group with the exception of $800 S&A and he's only off 27 weeks and you get $45,000, then no employer is going to locate in this state if that's going to be the standard of causation, that you just get a magical word of aggravation without any support. This is against the manifest way of the evidence. There's a clearly opposite conclusion apparent, and I would request that the court reinstate the decision of the arbitrator. Thank you, counsel. Counsel, you may respond. May it please the court. My name is John Laseganich. I'm the attorney for the injured worker in this case, Gordon Rohrer. Counsel, that was not easy to listen to. The industrial commission found the injured worker, I believe, if you read the comprehensive decision and opinion on review of the commission, I believe a reasonable person would believe that the commission found the petitioner to be credible. That is within their province, as well within their province. Let's do this. You said it was not easy to listen to you. His very vociferous argument here, clearly the commission found the claim incredible. Clearly the commission believed the opinion, the causal connection opinion of Dr. Newcomer. How do you address his continuing underlying theme that, yeah, the doctor said that, but there's no medical literature or medical evidence to support the opinion? How do you address that? Does that overturn the petitioner's burden of proving that an aspect of the work could or might be a cause? Who would spend the money to author a report specifically asking the question, will forklift driving cause an acetabular femoral impingement necessitating bilateral hip replacements? The facts of this case are compelling, your honor. I'm not denying that, but I'm just saying that's his argument. It is a weak argument at best. Why is it a weak argument? The absence of medical literature addressing such a narrow issue, that cannot be. That cannot rebut the opinions of the primary treating physician and surgeon and a very focused IME doctor, Joseph Newcomer. That's my response, your honor. Newcomer, in his opinion, he talked about sitting in a flexed position and jarring. He's asked a specific question. Do you know of any medical literature about driving a forklift? Well, no, I don't. But he talked about sitting in a flexed position and jarring. It wouldn't have to be in a forklift. It could be in some other vehicle or whatever, too, right? But not for 40 years. That's my point. Not 22 years as counsel represented. Four decades. That's what I thought. It was about four years, wasn't it? Four decades. And his testimony with respect to the character over which his drawer or talker traversed was not only unremitted, but reinforced by the testimony of one of the respondent's witnesses. Its first witness was a Mr. Michael Fink, 37-and-a-half-year employee of respondent who in 1986 became foreman of the vehicle repair. On direct examination in response to Mr. Macarossi's questioning, it's like somebody pulls a string. The forklifts operate, quote, exclusively on paved surface, be it concrete or blacktop or steel plate laid into concrete. On cross-examination, he recants his testimony. Fink concedes to the existence of holes, cracks, and dips throughout Keystone's flooring and that Fink never worked for a forklift as a forklift driver. Well, in the commission, you know, they said the commission is persuaded by petitioner's testimony that the ground over which he drove the forklift was rough and contained spots and holes. The respondent admits that there were defects in the ground and parts of the ground were covered by steel plating. The respondent offered no credible evidence to rebut Mr. Macarossi's testimony as to the condition of the ground. So, I mean, the commission obviously believed the petitioner, right? Yes, I would go so far as to say no more question of laws being imposed today. The commission is functioning as the commission. It is determining the credibility of witnesses, assessing weight, and most importantly, it is doing something within their particular province, which is weighing expert medical testimony. That's what the commission does. That's why we have a commission. The A.O. Smith case states that. And that's good law. The commission deals with these doctors on a day-to-day basis. They know Dr. Newcomer. They know Dr. Jimenez. They know Dr. Maurer, who's done over 1,500 total hips and total knees. And let's talk about the employer's expert medical witness, Dr. Jimenez. His deposition is vividly in my mind. I conducted it by telephone. And on cross-examination, my first real question to the man was, do you know how long petitioner worked for respondent as a drawer trucker? Response, objection irrelevant. This is a repetitive trauma case, an injury which evolves over time. I know something about this. I argued the Bellwood nursing home case before the Supreme Court in the fall of 1986. I know a little bit about this. And Dr. Jimenez, in order for him to have any opinion, which is to be accorded any credibility, fundamental to evidentiary law, is that there must be foundation. I asked him. It was embarrassing for him. He didn't know how long. He had no idea of the dimensions, speed, function. He didn't know whether Mr. Rohr operated the forklift in the standing or seated position. The man embarrassed himself. There was no credibility accorded to him. And that's appropriate. And that's what the commission does. It weighs expert medical testimony. I would submit that their expert failed the employer as an IME examiner and failed the employer as a witness, leaving us with the testimony of Dr. Newcomer, the testimony of Dr. Maurer, which was based upon the history of an adjudicated, credible witness and records review. Records, all those records that were admitted into arbitration. At deposition, Dr. Jimenez testified that he didn't have the records and didn't know where they were. Clearly, this decision of the commission, which is well within their profits, should be affirmed by this court. Thank you. Thank you, counsel. Thank you. Counsel, you may reply. The court is going where Uriah Bell would never have intended. This is clearly an osteoarthritic condition. It said it would be a difficult standard. I don't know what more the employer can do than refute any contemporaneous record, including when the man first went to Maurer May 22nd, 08, denied any more cause than Dr. Maurer did. Dr. Jimenez reviewed all the records that were marked part of the exhibit. His testimony was the length of time he drove the forklift, Jimenez drove a forklift when he worked construction, has no bearing because the forklift does not cause or accelerate. And they had a suspension seat. They had state-of-the-art equipment, gold standard. There was no report he never associated with. There's no medical literature that supports the commission finding, and there's really no evidence of aggravation other than them saying the magical word aggravation. When there's no change on x-ray that they can point to, no change in the operative report, and they admit once you have osteoarthritis, anything with everyday life is going to cause a symptom, that's not a compensable case. At best, he experienced a symptom of a condition where there's no evidence of change in which, in the contemporaneous medical records, he never once associated with his operative. Do you suggest that symptom that's caused, an increase in symptom caused by an industrial accident is not compensable? No, I'm not saying that at all, Your Honor. Even though the condition existed before? If there's an accident and there's an increase in symptoms and change in findings and where there's a consistent history of that, but what I'm saying here, if you look at all the contemporaneous medical records over five years, never did he associate it with his employment or having a jarring episode or being a jolt at work. Never once. And he even denied it to Dr. Maurer on May 22nd, and Maurer initially proclaimed it not work-related. Jim has reviewed all records. He's a board certified. He teaches the certification class for orthopedics. His opinion is correct. This case is not compensable. This will have a devastating effect on all employers if you're going to make them responsible for a clearly arthritic condition when there really is no evidence of aggravation, diagnostically or objectively. It's based upon pure speculation and conjecture. I request the arbitrator's decision be reinstated. Thank you. Thank you, Counsel. Thank you, Counsel Balls, for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue.